# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| BKL HOLDINGS, INC. d/b/a LICENSE COACH, § § § *Plaintiff,* § § v. § § GLOBE LIFE INC., et al., § § *Defendants.* § | Civil Action No. 4:22-cv-00170 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Globe Life Inc., American Income Life Insurance Company, Liberty National Insurance Company, and Family Heritage Life Insurance Company of America's Motion to Dismiss Plaintiff's Original Petition (Dkt. #22) and Defendants James "Bo" E. Gentile, Jr. and David Zophin's Joinder and Motion to Dismiss Plaintiff's Original Petition (Dkt. #23).  Having considered the motions, the responses, and the applicable law, the Court finds that the motions should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Plaintiff BKL Holdings, Inc. d/b/a License Coach provides testing and training materials to prospective insurance agents preparing for licensing exams (Dkt. #4 ¶ 13).  Defendant Globe Life, Inc. is a holding company for insurance companies, including Defendants American Income Life Insurance Company, Liberty National Insurance Company, and Family Heritage Life Insurance Company of America (with Globe Life, collectively the "Globe Life Defendants") (Dkt. #4 ¶ 12).  Defendants James "Bo" E. Gentile, Jr. and David Zophin (collectively, the

"Individual Defendants") are executives employed by the Globe Life Defendants (Dkt. #4 ¶¶ 7–8).[1]

## I.   Factual Background

In 2017, Defendants allegedly approached Plaintiff regarding an opportunity to provide licensing exam-preparation materials for all of Globe Life's prospective new agents (Dkt. #4 ¶¶ 21–22).  Before that time, Plaintiff worked with several Globe Life affiliates as an approved pre-licensing vendor (Dkt. #4 ¶ 16).  Plaintiff contends that it attained considerable success with Globe Life affiliates by offering comprehensive exam-preparation materials more affordably than similar materials offered by its competitors, namely non-party Xcel Testing Solutions, LLC ("Xcel Testing") (Dkt. #4 ¶¶ 16–19).

According to Plaintiff, in April 2017, Defendant James "Bo" E. Gentile, Jr. requested that Plaintiff prepare a presentation on its systems and the "key differentiators" between Plaintiff and its competitors (Dkt. #4 ¶ 21).  Plaintiff obliged Defendant Gentile's request and sent a presentation to Defendant Gentile in an email with a notice stating that the email's attachments "may contain confidential information" and that the email should be destroyed if received "in error" (Dkt. #4 ¶ 21).  Plaintiff further alleges that, following its initial presentation to Defendant Gentile, it submitted a more comprehensive proposal to Defendants in response to a request for proposal to bid for all of Globe Life's testing and training business (Dkt. #4 ¶ 22–23).  This proposal—which was sent with the same confidentiality notice that accompanied Plaintiff's original presentation to Defendant Gentile—allegedly included a trove of Plaintiff's "proprietary and confidential strategic information," such as information on its software platform, systems,

---

[1] Specifically, Defendant Gentile is Globe Life's senior vice president of recruiting and Defendant Zophin is president of American Income Life (Dkt. #4 ¶¶ 7–8).

2

customers, prospective customers, and pricing (Dkt. #4 ¶¶ 22–24).  After receiving this proposal, Defendants allegedly ceased all communication with Plaintiff (Dkt. #4 ¶ 26).

A short time later, the confidential and proprietary information contained in Plaintiff's proposal to Globe Life allegedly appeared in Xcel Testing's marketing materials (Dkt. #4 ¶ 27). According to Plaintiff, the Individual Defendants had a hidden ownership stake in Xcel Testing and had provided Xcel Testing with Plaintiff's confidential and proprietary information as part of a larger "bribery and kickback scheme" (Dkt. #4 ¶¶ 27–30).  Under this purported scheme, Defendants forced Globe Life agents to require prospective new recruits to purchase testing and training materials from Xcel Testing at an inflated cost of $149, $30 of which was kept by Xcel Testing with the remainder kicked back to Defendants (Dkt. #4 ¶ 30).

Plaintiff contends that it first learned of this scheme on March 3, 2020, when it received a copy of a complaint filed against Xcel Testing in New Jersey state court that disclosed a complete list of Xcel Testing's owners (Dkt. #4 ¶ 29).  Among the individuals and entities named in the New Jersey complaint were Defendant Gentile's mother-in-law and a holding company that is allegedly owned and controlled by Defendant Zophin (Dkt. #4 ¶ 29).

**II.     Procedural History**

On March 2, 2022, Plaintiff filed this case in the 429th Judicial District Court in Collin County, Texas, asserting causes of action for (1) breach of fiduciary duty, (2) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), (3) fraud, and (4) conspiracy (Dkt. #4).  On March 3, 2022, Defendants removed the case to this Court on diversity grounds under 28 U.S.C. §§ 1332, 1441, and 1446 (Dkt. #1 at p. 1).

On June 27, 2022, the Globe Life Defendants moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. #22).  On the same day, the Individual Defendants

3

filed their own motion to dismiss, which joined and supplemented the arguments raised by the Globe Life Defendants (Dkt. #23). Plaintiff responded to both motions on August 11, 2022 (Dkt. #24; Dkt. #25). On September 8, 2022, the Globe Life Defendants and the Individual Defendants filed their respective replies (Dkt. #26; Dkt. #27).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 304–05 (5th Cir. 2015). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022). The court must then determine whether the complaint states a claim for relief that is plausible on its face. *Swindol v. Aurora Flight Scis. Corp.*, 832 F.3d 492, 494 (5th Cir. 2016).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the court to infer more than the mere

4

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (internal citations omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendants move to dismiss Plaintiff's claims in their entirety. Defendants argue that Plaintiff's claim for misappropriation under TUTSA is inadequately pleaded and barred by the statute of limitations (Dkt. #22 at pp. 16–22). Likewise, Defendants contend that Plaintiff's common law claims for breach of fiduciary duty, fraud, and conspiracy are preempted by TUTSA, inadequately pleaded, and barred by the statute of limitations (Dkt. #22). The Court will first address the issue of preemption under TUTSA before turning to Plaintiff's claim for misappropriation of trade secrets.

I.     **TUTSA Preemption**

Defendants argue that Plaintiff's common law tort claims are preempted by TUTSA (Dkt. #22 at p. 22). TUTSA's preemption provision provides that the statute "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.007(a). Excepted from the preemption provision are "contractual remedies," "other civil remedies that are not based upon misappropriation of a trade secret," and "criminal remedies." *Id.* §§ 134A.007(b)(1)–(3). The purpose of TUTSA's preemption provision is to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *E.g.*, *ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 684 (W.D. Tex. 2019) (quoting *Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.)).

Here, the applicability of TUTSA's preemption provision turns on whether Plaintiff's claims for breach of fiduciary duty, fraud, and conspiracy are "based upon misappropriation of a trade secret" as defined by the statute. Defendants argue that Plaintiff's common law claims are preempted because they are based entirely on the same allegations as its claim for misappropriation of trade secrets under TUTSA (Dkt. #22 at p. 23). Plaintiff contends that its common law claims are not preempted by TUTSA because they involve allegations that Defendants misappropriated trade secrets and other confidential information (Dkt. #25 at pp. 32–33).

Although Texas courts have provided little guidance on the scope of TUTSA's preemption provision, the majority of courts considering this issue—including this one—have held that TUTSA preempts all claims based on "the alleged improper taking of trade secret and confidential business information." *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d

6

311, 338–39 (E.D. Tex. 2019); *ScaleFactor*, 394 F. Supp. 3d at 684 (holding that "TUTSA preempts claims based on the unauthorized use of confidential information that was not a trade secret"); *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 1:14-CV-00847, 2016 WL 900577, at *8 (W.D. Tex. Mar. 2, 2016) (holding that TUTSA "was intended to preempt all claims based upon the unauthorized use of information"). And the only Texas court that has considered the scope of TUTSA's preemption provision in any detail has indicated that TUTSA requires preemption when a claim depends on the misappropriation of a trade secret alone *and* when the claim is dependent on the misappropriation of either trade secrets or confidential information. *Super Starr*, 531 S.W.3d at 843 (emphasis added). In *Super Starr*, the court concluded that a breach of fiduciary duty claim was preempted under TUTSA because the claim necessarily depended on the "use of alleged trade secrets" when the plaintiff alleged the misappropriation of "confidential and proprietary information." *Id.*

More broadly, the majority of courts applying the Uniform Trade Secrets Act's ("UTSA") preemption provision—which is substantively identical to TUTSA's preemption provision—have concluded that the UTSA "preempts noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret." Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act*, 17 SMU SCI. & TECH. L. REV. 95, 109 (2014). This so-called "majority approach" has been adopted by courts in UTSA jurisdictions across the country. *See, e.g.*, *Mattel, Inc. v. MGA Enter., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) ("[T]he Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *Ethypharm S.A. France v. Bentley Pharms., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) ("Because all claims stemming from the same acts as the alleged

misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret.").[2]

Plaintiff relies on a pair of cases decided by another Texas federal court, which it cites for the proposition that TUTSA does not preempt causes of action stemming from the misappropriation of confidential information that is not a trade secret (Dkt. #25 at p. 33) (citing *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 923 (S.D. Tex. 2019); *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, 241 F. Supp. 3d 788, 827 (S.D. Tex. 2017)). But this Court has already considered—and declined to follow—the approach set out in *DHI Group* and *AMID*, choosing instead to follow the majority approach and holding that TUTSA "preempts all claims based on the alleged improper taking of trade secret and confidential business information." *StoneCoat*, 426 F. Supp. 3d at 338–39.

When faced with the same arguments raised by Plaintiff, other courts have also declined to follow *AMID*. *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-00444, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018). In *Embarcadero*, the court considered—and ultimately rejected—the reasoning of *AMID*, on which the plaintiff relied to argue that TUTSA preemption does not apply to claims for the improper taking of confidential information that does not satisfy the statutory requirements of a trade secret. *Id.* The court rejected this argument, holding instead that "given the purpose behind TUTSA's preemption provision and the number of cases across the country applying Uniform Trade Secrets Act preemption and finding to the contrary," claims based on the improper taking of confidential information are preempted by TUTSA. *Id.* at *4. Indeed, rather than embracing a narrow construction of TUTSA's preemption provision, the court in

---

[2] These cases are particularly useful here because, as the court noted in *Super Starr*, "[t]here are few Texas cases analyzing the Texas Uniform Trade Secrets Act's preemption provision" and "other cases analyzing similar provisions of the applicable Uniform Trade Secrets Act are instructive." 531 S.W.3d at 843.

*Embarcadero* explicitly relied on the reasoning of *Super Starr* and the purpose underlying the statute to conclude that the preemption provision "encompasses all claims based on the alleged improper taking of confidential business information." *Id.*

The Court reaches the same conclusion here. Simply put, the narrow reading of TUTSA advanced by Plaintiff would allow multiple theories of relief stemming from the same core injury—the misappropriation of proprietary information. This would undermine the stated purpose of TUTSA, which was specifically enacted to define the boundaries of trade secret protection and to create a uniform body of law. TEX. CIV. PRAC. & REM. CODE ANN. § 134A.008; *Embarcadero Techs.*, 2018 WL 315753, at *3 ("To narrow the [TUTSA's preemption provision] exclusively to information that qualifies as a trade secret under the statute would frustrate" the statute's purpose).

And so, the applicability of TUTSA's preemption provision to Plaintiff's common law tort claims depends on whether the claim at issue is "based on the alleged improper taking of trade secret and confidential business information." *StoneCoat*, 426 F. Supp. 3d at 338–39.

### A. Breach of Fiduciary Duty

At its core, Plaintiff's claim for breach of fiduciary duty is premised on Defendants' alleged misappropriation of Plaintiff's trade secret and confidential business information. In fact, Plaintiff's sole basis for its breach of fiduciary duty claim is its allegation that Defendants "misappropriat[ed] License Coach's trade secrets and confidential and proprietary information and materials" (Dkt. #4 ¶ 44). Thus, Plaintiff's claim for breach of fiduciary duty is preempted by TUTSA. *Embarcadero Techs.,* 2018 WL 315753, at *4 (holding that TUTSA preempted claim for breach of fiduciary duty when the "sole basis" for plaintiff's claim was "the misappropriation of confidential business information"); *Super Starr*, 531 S.W.3d at 843 (TUTSA preempted claim

9

for breach of fiduciary duty based on the misappropriation of "confidential and proprietary information").

### B. Fraud

Likewise, Plaintiff's fraud claim is also rooted in Defendant's alleged misappropriation of trade secret and confidential information. Plaintiff alleges that Defendants "gained knowledge of License Coach's trade secrets and confidential and proprietary information and materials" through fraud (Dkt. #4 at ¶ 60). In effect, Plaintiff's fraud claim depends entirely on the same set of facts that underly its claim for misappropriation of trade secrets under TUTSA. As a consequence, Plaintiff's fraud claim is also preempted by TUTSA. *Richter v. Carnival Corp.*, No. 3:18-CV-2172, 2020 WL 1876098, at *4 (N.D. Tex. Apr. 15, 2020), *aff'd*, 837 F. App'x 260 (5th Cir. 2020).

### C. Conspiracy

Finally, Plaintiff's claim for civil conspiracy is based on the allegedly improper taking of trade secret and confidential business information. Plaintiff alleges that "Defendants engaged in a combination or conspiracy seeking to accomplish an object of misappropriating, defrauding and/or breaching their fiduciary duties to License Coach with respect to the trade secrets and confidential and proprietary information and materials of License Coach" (Dkt. #4 ¶ 66).

This claim must be dismissed for two reasons. First, a civil conspiracy claim that is based on the misappropriation of trade secrets is preempted and should be dismissed. *Stress Eng'g Servs., Inc. v. Olson*, No. 4:21-CV-3210, 2022 WL 4086574, at *8 (S.D. Tex. Aug. 4, 2022), *R. & R. adopted*, No. 4:21-CV-3210, 2022 WL 4084433 (S.D. Tex. Sept. 6, 2022) (citing *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1362–64 (Fed. Cir. 2005)). Second, because Plaintiff's other common law claims are also preempted, its conspiracy claim necessarily fails as a matter of law. *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019) (noting that

"when plaintiffs fail to state a claim for any underlying tort, their claims for civil conspiracy likewise fail") (applying Texas law).

In sum, the Court concludes that Plaintiff's common law tort claims for breach of fiduciary duty, fraud, and conversion are preempted by TUSTA and, therefore, those claims must be dismissed.[3]

## II.   Misappropriation of Trade Secrets

Defendants also move to dismiss Plaintiff's claim for misappropriation of trade secrets, arguing that it is inadequately pleaded and barred by the statute of limitations (Dkt. #22 at p. 18). The Court addresses each of these arguments in turn.

### A.   Plaintiff's Misappropriation Claim

Under TUTSA, a plaintiff must establish the following to prove trade secret misappropriation: (i) a trade secret existed; (ii) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; (iii) the trade secret was used without authorization; and (iv) the trade secret owner suffered damages as a result. *Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *4 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002); *Hoover Panel Sys., Inc. v. HAT Contract, Inc.*, 819 F. App'x 190, 198 (5th Cir. 2020) (applying Texas law).

After reviewing the current complaint, and the arguments contained in the briefing, the Court finds that Plaintiff has stated a plausible claim for relief under TUTSA.

---

[3] Because the Court concludes that these claims are preempted by TUTSA, no leave to amend is necessary because amendment would be futile. *See, e.g.*, *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013) (noting that leave to amend was futile when plaintiff's state law claims were preempted).

11

B.     **Statute of Limitations**

Under Texas law, a claim for misappropriation of trade secrets is subject to a three-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.010(a). "A cause of action for misappropriation of trade secrets accrues when the trade secret is actually used." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325–26 (5th Cir. 2018) (applying Texas law).

Defendant argues that Plaintiff's misappropriation claim is barred by the statute of limitations because Plaintiff's proprietary and confidential information began appearing in Xcel Testing's marketing materials in 2017 and Plaintiff did not file this suit until March 2022 (Dkt. #22 at pp. 16–18). In response, Plaintiff contends that the "discovery rule" applies and that the statute of limitations did not begin to run until it knew or otherwise should have known of facts that, in the exercise of reasonable diligence, would have led to the discovery of the misappropriation (Dkt. #26 at p. 14).

At the motion to dismiss stage, movants bear the burden of establishing as a matter of law that the statute of limitations applies to plaintiff's claim despite the discovery rule. *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2018 WL 1964180, at *10 (E.D. Tex. Apr. 25, 2018). Thus, when a plaintiff invokes the discovery rule and when that plaintiff's complaint "at least plausibly sets out facts where the discovery rule might apply, the court cannot resolve that issue in the context of a motion to dismiss." *Janvey v. Suarez*, 978 F. Supp. 2d 685, 708 (N.D. Tex. 2013) (cleaned up). Rather, Texas and Fifth Circuit cases applying the discovery rule indicate that "dismissal typically occurs at the summary judgment phase, after facts added to the record can lead to more fully formed conclusions." *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 322 (5th Cir. 2011).

Here, Plaintiff's complaint plausibly sets out facts indicating that the discovery rule might apply. As a result, the Court finds that Defendants' statute-of-limitations defense is premature.

## CONCLUSION

It is therefore **ORDERED** that the Globe Life Defendants' Motion to Dismiss Plaintiff's Original Petition (Dkt. #22) and the Individual Defendants' Joinder and Motion to Dismiss Plaintiff's Original Petition (Dkt. #23) are hereby **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Plaintiff's claims for breach of fiduciary duty, fraud, and conspiracy are **DISMISSED with prejudice.**

**IT IS SO ORDERED**.

**SIGNED this 9th day of March, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE